UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MAIKEL YANTER CHAMBERLAIN SALAZAR,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security; et al.,<br><br>Respondents. | Case No.:  26-cv-294-BJC-SBC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 8 U.S.C. § 2241**<br><br>**[ECF No. 1]** |

Before the Court is Maikel Yanter Chamberlain Salazar's ("Petitioner") petition for writ of habeas corpus that was filed on January 18, 2026.  ECF No. 1.  On January 29, 2025, Respondents filed a response, ECF No. 5, and on January 30, 2026, Petitioner filed a traverse.  ECF No. 6.

## I.      BACKGROUND

Petitioner, a native and citizen of Cuba, entered the United states in 2001.  ECF No. 1 at 3. At the time, he did not possess legal documentation to enter the United States.  ECF No. 5 at 2.  Officers with U.S. Customs and Border Protection determined Petitioner to be

1

an arriving alien inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I), placed him into expedited removal proceedings under 8 U.S.C. § 1225(b)(1), and transferred him to the custody of U.S. Immigration and Customs Enforcement ("ICE") under 8 U.S.C. § 1225(b)(1)(B). *Id.* An asylum officer subsequently interviewed Petitioner and issued a positive credible fear determination. *Id.* On January 12, 2022, the Department of Homeland Security ("DHS") issued a Notice to Appear, thereby initiating removal proceedings. *Id.* On January 18, 2022, Petitioner was granted parole and released from ICE custody. *Id.*

On August 19, 2024, Petitioner was arrested and charged with aggravated assault by strangulation.[1] *Id.* The day after his arrest, the state court judge ordered Petitioner's release without requiring the posting of bond. ECF No. 9 at 2. Petitioner was then immediately taken into ICE custody pursuant to an immigration detainer for removal proceedings. *Id.* On July 11, 2025, an immigration judge ordered Petitioner removed to Cuba. ECF No. 5 at 2. Neither DHS nor Petitioner appealed the decision, and the removal order became final. *Id.*

On October 15, 2025, Cuba declined to accept Petitioner for repatriation. *Id.* On October 17, 2025, ICE designated Mexico as the country of removal, and on November 7, 2025, ICE attempted to remove Petitioner to Mexico at the San Ysidro Port of Entry. *Id.* at 2-3. However, Petitioner refused removal to Mexico and was returned to immigration custody. *Id.* He has remained in detention since August 20, 2024. *See* ECF No. 1 at 3-4.

## II.   **LEGAL STANDARD**

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl.

---

[1] The Court ordered supplemental briefing regarding the disposition of Petitioner's arrest. ECF No. 7. Both parties filed responses that indicated that the case is still pending. See ECF Nos. 8, 9. Neither party contends that the existence of a pending criminal case affects the issues presently before the Court. *See generally* ECF No. 8. Accordingly, the Court does not address that issue.

26-cv-294-BJC-SBC

2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  Under 28 U.S.C. § 2241, a district court has the authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  The Petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

## III.   DISUCSSION

### A.      Jurisdiction under 8 U.S.C. § 1252(g)

Under 8 U.S.C. § 1252(g), except as otherwise stated, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  The Ninth Circuit has made clear, however, that § 1252(g) must be read "narrowly" as to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Ibarra-Perez v. United States*, No. 24-631, at *6, *14–15 (9th Cir. Aug. 27, 2025) (emphasis in original).  Section 1252(g) "does not prohibit challenges to unlawful practices merely because they are in some fashion connected to removal orders." *Id.* at *18.  Specifically, § 1252(g) does not bar due process claims. *Walters v. Reno*, 145 F.3d 1032, 1032 (9th Cir. 1998).  "[The plaintiffs'] objective was not to obtain judicial review of the merits of their . . . proceedings, but rather to enforce their constitutional rights to due process in the context of those proceedings." *Id.* at 1052.

The Court concludes that it has jurisdiction.  Petitioner is not challenging Respondents' decision to execute a removal order, which would bar this Court's review.  Instead, he challenges the legality of his detention based on alleged violations of statutory, regulatory, and constitutional due process.  Such claims fall squarely within the Court's habeas authority. *See Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) ("[W]e have

26-cv-294-BJC-SBC

limited [1252(g)]'s jurisdiction-stripping power to actions challenging the Attorney General's discretionary decisions to initiate proceedings, adjudicate cases, and execute removal orders."); *accord Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (interpreting 1252(g) to allow jurisdiction over detention challenges).

**B.**      **Lawfulness of Petitioner's Continued Detention Under 8 U.S.C. § 1231(a)(2)**

Section 1231 governs the arrest and detention of noncitizens subject to a final removal order.  *See* 8 U.S.C. § 1231.  It directs the Attorney General to effectuate removal "within a period of 90 days," known as the "removal period," during which detention is authorized. § 1231(a)(1)–(2).  In *Zadvydas*, the Supreme Court clarified that detention beyond the removal period is presumptively lawful for up to six months; after that, a noncitizen may make a prima facie case for relief by sharing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," at which point the burden shifts to "the Government [to] respond with evidence sufficient to rebut that showing." 533 U.S. at 701.

The Court finds that Petitioner has satisfied his burden under *Zadvydas*. Petitioner was ordered removed in July 2025, ECF No. 1 at 3, and the six-month presumptive detention period has expired. Petitioner has presented evidence that removal to Cuba is uncertain. In fact, Cuba expressly rejected his repatriation.  ECF No. 5-1 at 2.  No travel documents have been obtained at this time.  *Id.* at 3.  While Respondents contend that detention remains lawful because they are making affirmative efforts to secure a third country for removal, the Court finds that mere good-faith efforts is insufficient under *Zadvydas*. *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1081–82 (9th Cir. 2006) (holding that the government lacked authority to detain an individual indefinitely under § 1231 where removal was not reasonably foreseeable despite ongoing diplomatic efforts). Continued detention must be justified by a significant likelihood of removal within a reasonably foreseeable period, and Respondents have failed to meet that standard.

26-cv-294-BJC-SBC

## C.    Due Process Constraints on ICE's Third-Country Removal Policy

Due process supports Petitioner's request for injunctive relief related to ICE's policy regarding third country removals presented in the memorandum dated July 9, 2025. ECF No. 1 at 24. Several courts within the Ninth Circuit have held the policies provided in the ICE memorandum violate due process. *Lapshin v. Bondi*, No. C25-2245-KKE, 2026 WL 71407, at *5 (W.D. Wash. Jan. 9, 2026); *Elshourbagy v. Bondi*, No. 2:25-CV-02432-TL, 2025 WL 3718993, at *8 (W.D. Wash. Dec. 23, 2025); *Escobar v. Chestnut*, No. 1:25-CV-01801-DJC-EFB, 2025 WL 3687639, at *4 (E.D. Cal. Dec. 19, 2025); *Azzo v. Noem*, No. 3:25-CV-03122-RBM-BJW, 2025 WL 3535208, at *7 (S.D. Cal. Dec. 10, 2025); *Vishal v. Chestnut*, __ F.Supp.3d __, 2025 WL 3511815, at *6 (E.D. Cal. Dec. 8, 2025); *Kumar v. Wamsley*, No. C25-2055-KKE, 2025 WL 3204724, at *6 (W.D. Wash. Nov. 17, 2025); *Vu v. Noem*, No. 1:25-CV-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025); *Esmail v. Noem*, No. 2:25-CV-08325-WLH-RAO, 2025 WL 3030589, at *6 (C.D. Cal. Sept. 26, 2025).

This Court agrees. The memorandum suggests removal to a third country may occur without an opportunity to be heard if the United States receives and believes diplomatic assurances that there will be no persecution or torture. According to the Ninth Circuit, "last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 F. App'x 724 (9th Cir. 2016). Additionally, when the third country does not provide such assurances, ERO "will not affirmatively ask whether the alien is afraid of being removed to that country." However, "[f]ailing to notify individuals who are subject to deportation that they have the right to apply for asylum. . .and for withholding of deportation to the country to which they will be deported violates" regulations and due process. *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) (*citing Kossov v. INS*, 132 F.3d 405, 408–09 (7th Cir.1998)).

//

//

26-cv-294-BJC-SBC

## IV.    CONCLUSION

Based on the foregoing, the Court **ORDERS**:

1. The petition for writ of habeas corpus is **GRANTED**.

2. Respondents shall immediately release Petitioner.

3. Respondents are **ENJOINED** from re-detaining Petitioner under 8 U.S.C. § 1231(a)(6) unless and until Respondents obtain a travel document for his removal.

4. Respondents are **ENJOINED** from re-detaining Petitioner without first following the procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures.

5. Respondents are **ENJOINED** from removing Petitioner to a third country unless they adhere to the following procedures:
   a. provide written notice to Petitioner, in a language he can understand and to his counsel;
   b. provide Petitioner a minimum of ten (10) days to raise a fear-based claim for CAT protection prior to removal;
   c. if Petitioner demonstrates reasonable fear of removal to the country, Respondents must move to reopen Petitioner's removal proceedings;
   d. if Petitioner is not found to have demonstrated a reasonable fear of removal to the third country, Respondents must provide a meaningful opportunity, and a minimum of fifteen (15) days for Petitioner to seek reopening of his immigration proceedings.

6. The Clerk of Court shall close this matter.

**IT IS SO ORDERED.**

Dated:  February 26, 2026

_Bryan Cheeks_

Honorable Benjamin J. Cheeks
United States District Judge

26-cv-294-BJC-SBC